JUDGE DAVID GUADERRAMA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION



| | |
|---|---|
| ERIK SALAIZ, | § |
| | § |
| | § |
| **Plaintiff,** | § |
| | § |
| v. | § |
| | § |
| CAPITAL HEALTH ADVISORS, INC. a Florida | § |
| Corporation, **PREMIER ADMINISTRATIVE** | § |
| **SOLUTIONS, INC**, a Delaware Corporation, and | § |
| **MARIO CALLEJAS** | § |
| **Defendants.** | § |
| | § |

EP22CV0077

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.    The Plaintiff is ERIK SALAIZ ("Plaintiff") a natural person, resident of the Western

District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2.    Defendant CAPITAL HEALTH ADVISORS, INC. ("Capital") is a corporation organized

and existing under the laws of Florida and can be served via registered agent Mario Callejas at

4300 University Drive, B204, Lauderhill, Florida 33351.

3.    Defendant PREMIER ADMINISTRATIVE SOLUTIONS, INC. ("Premier") is a

corporation organized and existing under the laws of Delaware with a principle address at 13600

ICOT Boulevard, Building A, Clearwater, Florida 33760  and can be served via registered agent

Corporation Service Company at 1201 Hays Street, Tallahassee, Florida 32301.

4.    Defendant MARIO CALLEJAS (" Callejas") is a natural person, resident of Florida, and

President of Capital and can be served at 4300 University Drive, B204, Lauderhill, Florida

33351.

1

5.      Defendant Capital, Premier, and Callejas altogether ("Defendants")

## JURISDICTION AND VENUE

6.      Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's

TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow*

*Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). Defendants' telemarketing robocalls to Plaintiff;

adds little complexity to the case.

7.      Personal Jurisdiction. This Court has general personal jurisdiction over the defendants

because they have repeatedly placed calls to Texas residents, and derive revenue from Texas

residents, and they sell goods and services to Texas residents, including the Plaintiff.

8.      Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a

substantial part of the events giving rise to the claims—the calls and sale of goods and services

directed at Texas residents, including the Plaintiff—occurred in this District and because the

Plaintiff resides in this District. Residing in the Western District of Texas when he received a

substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

9.      This Court has venue over the defendants because the calls at issue were sent by or on

behalf of the above-named Defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

10.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing

equipment that could target millions of consumers *en masse*. Congress found that these calls

were not only a nuisance and an invasion of privacy to consumers specifically but were also a

threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in

1991 U.S.C.C.A.N. 1968, 1969-71.

2

11.    The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

12.    The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

13.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

14.    Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

15.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

16.    According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

17.    The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing*

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

*the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

18.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

19.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

20.     The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

21.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

22.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist.

4

LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate

actors can be individually liable for violating the TCPA where they had direct, personal

participation in or personally authorized the conduct found to have violated the statute." (internal

quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D.

Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability,

the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

23.     Plaintiff's personal cell phone has been on the National Do-Not-Call Registry since May
2021.

24.     Plaintiff has never had any relationship with Defendants and never gave them his prior
express written consent to receive the unauthorized robocalls alleged in this case.

25.     Defendants Capital and Callejas have been sued before for violating the TCPA Case#
1:20-cv-05814 and continue to knowingly and willfully break the law because it benefits
Defendants financially.

26.     Through information and belief the Defendants use the same anonymous telemarketing
company to send robocalls to consumers en mass using artificial or prerecorded messages
soliciting health insurance plans.

27.     Plaintiff received at least six unauthorized robocalls within 60 days to his personal cell
phone (915) 252-9280 from Defendants.

28.     Each and every call Plaintiff received from Defendants started with the following
artificial or prerecorded messages that stated:

"Hello this Amy with the health insurance center if you missed open enrollment we have great
news we offer PPO plans through private A plus carries such as Signa, Blue Cross, United
Health Care, and many more. If you are not happy with your current plan paying too much or

5

need coverage immediately we have the right plans for you. If you'd like to hear more about our PPO plans please press one to speak to an agent."

"Hello did you miss the enrollment period do you have pre existing conditions high deductibles or your paying high premiums with our open enrollment health plans you are covered from day one and receive unlimited doctors and specialist visits emergency rooms urgent care hospitalization surgeries 100 percent annual check up accident coverage dental vision at only a fraction of the price to hear more about our plans please press one to speak to an agent."

29.     On January 31, 2022 Plaintiff received a call to his personal cell phone (915) 252-9280 from Defendant Capital from phone number (603) 664-2638.

30.     Plaintiff answered and heard an artificial or prerecorded voice message that said Hello this is Amy with the health insurance center. Plaintiff was aggravated and annoyed for receiving the same exact call multiple times within a week and pressed one to speak to an agent in order to identify the company responsible for the illegal robocalls.

31.     Plaintiff was then transferred to a representative named Mario that stated he was with Defendant Capital.  Mario stated their company represents most of the A plus rated carries in the countries.

32.     Mario then collected Plaintiff's personal information and solicited Plaintiff for a healthcare plan on behalf of Defendants.

33.     Plaintiff advised Mario he was interested in a healthcare plan for the sole purposes of identifying the company responsible for the illegal robocalls.

34.     Mario advised Plaintiff his healthcare plan would cost $125/month plus $50 enrollment fee.

35.     The cost of the healthcare plan offered to Plaintiff benefits all Defendants financially.

36.     Mario then advised Plaintiff he was going to transfer him to the verification department.

6

37.     Plaintiff was then transferred to another agent from Defendant Capital named Paula.

38.     Paula then verified all of Plaintiff's information along the terms of the healthcare plan
and sent a text to Plaintiff's cell phone (915) 252-9280 from phone number (949) 288-2906 in
order to sign the healthcare plan.

39.     Plaintiff also received an email from
customerservice@premieradministrativesolutions.com that contained the information of the
companies responsible for the illegal robocalls.

40.     Defendant Premier is listed as the "Selected Market Insurance" in the email.

41.     Paula provided Plaintiff with their website https://quickhealthplans.com which is owned
and operated by Capital.

42.     Paula then transferred Plaintiff to her benefits director named Carl.

43.     Carl advised Plaintiff they're the broker and obtain clients on behalf of insurance carriers.

44.     On March 2, 2022 Plaintiff received a call to his personal cell phone (915) 252-9280
from Defendant Capital from phone number (808) 377-1291.

45.     Plaintiff answered and heard an artificial or prerecorded voice message that said Hello
did you miss the enrollment period do you have pre existing conditions high deductibles or your
paying high premiums? Plaintiff pressed one to speak to an agent in order to identify the
company responsible for the illegal robocalls.

46.     Plaintiff was then transferred to the same representative Mario from Defendant Capital.

47.     Plaintiff also spoke to the same director Carl another representative from Defendant
Capital.

48.     Mario and Carl confirmed they were with Defendant Capital and solicited Plaintiff again
for a healthcare plan on behalf of Defendants.

7

49.     On March 3, 2022 Plaintiff received a call to his personal cell phone (915) 252-9280 from Defendant Capital from phone number (217) 395-4037.

50.     Plaintiff answered and heard an artificial or prerecorded voice message that said Hello did you miss the enrollment period do you have pre existing conditions high deductibles or your paying high premiums? Plaintiff pressed one to speak to an agent in order to identify the company responsible for the illegal robocalls.

51.     Plaintiff was then transferred to a representative named James from Defendant Capital.

52.     James collected Plaintiff's name and asked Plaintiff some medical questions then said he was going to transfer Plaintiff to a licensed agent.

53.     Plaintiff was then transferred to Mario the same representative he spoke to the day before. Mario solicited Plaintiff for a healthcare plan on behalf of Defendants.

54.     Plaintiff advised Mario he spoke to him and his director Carl about a healthcare plan the day before. Mario acknowledged they spoke confirming it was another call from Defendants.

55.     Mario called back Plaintiff a few hours later from phone number (915) 840-1233 to follow up. Plaintiff did not give Mario his prior express consent to call back and follow up.

56.     The healthcare plans solicited to Plaintiff from Defendant Capital would benefit all Defendants financially.

57.     Defendant Callejas knowing and willfully authorizes anonymous telemarketers to place illegal robocalls as the one alleged in this case to millions of consumers en mass by using an ATDS.

58.     Defendant Callejas controls and dominates EHG.

59.     Defendant Callejas approves of the contracts with the telemarketers.

60.     Defendant Callejas authorizes the payments to the telemarketers.

8

61.     Defendant Callejas pays the telemarketers out of bank accounts he owns and controls.

62.     Defendant Callejas approves of the scripts with the artificial or prerecorded messages soliciting health insurance plans on behalf of EHG.

63.     Defendants on one occasion used a local area code (915) where Plaintiff resides to trick him into thinking the call was local.

64.     Table below displays calls made to Plaintiff by Defendants:

| Date | Time | Caller ID |
|------|------|-----------|
| 1/24/2022 | 1:28pm | 541-692-8482 |
| 1/27/2022 | 11:10am | 478-276-4240 |
| 1/31/2022 | 9:50am | 603-664-2638 |
| 3/2/2022 | 11:39am | 808-377-1291 |
| 3/3/2022 | 10:00am | 217-395-4037 |
| 3/3/2022 | 1:25PM | 915-840-1233 |

65.     Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

66.     Each and every call was placed while knowingly ignoring the national do-not-call registry.  Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy

67.     The Defendants never sent Mr. Salaiz any do-not-call policy.  Plaintiff sent an internal do-not-call policy request to capitalhealthadvisorscs@gmail.com and customerservice@premieradministrativesolutions.com which are listed in the email received from Defendants.

68.     Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

69.     No emergency necessitated the calls.

70.     On information and belief, the Defendants did not train its agents who engaged in

9

telemarketing on the existence and use of any do-not-call list.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

### AS A RESULT OF THE CALLS

71.    Defendants' calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

72.    Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

73.    Defendants' calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

74.    Plaintiff has been harmed, injured, and damages by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone.

## DEFENDANT CALLEJAS IS PERSONALLY LIABLE

1.    Defendant Callejas refuses to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit Defendant Callejas financially.

2.    "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc*., 763 F.2d 133, 134-135 (2nd Cir.1985)

3.    The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some

direct, personal participation in the tort, as where the defendant was the 'guiding spirit'

behind the wrongful conduct....or the 'central figure' in the challenged corporate

activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing

*Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing

*Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

4. Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.

> To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful contuct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is fare more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

5. The Same Court held that corporate officers were also personally liable for DTPA violations

> The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct.....For the same reasons discussed in finding the individual defendants personally liable under

the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation......Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001

6. At all times material to the Complaint, acting alone or in concert with others, Defendant Callejas has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant Capital including the acts or practices set forth in this Complaint.

7. Defendant Callejas is the principal director and operator of Defendant Capital controls the day-to-day operations of Capital and directed their employees, agents, salespersons, and solicitors to make TCPA violating phone calls and to solicit health insurance plans.

8. Defendant Callejas approved the telemarketing scripts, signed the contracts, paid commissions for the illegal behavior, and directed the illegal calls to be made for his financial benefit.

9. Defendant Callejas knowingly and willfully ignores the law. He continues to solicit health insurance plans via automated messages with prerecorded voice messages. These violations are the direct result of the instructions Defendant Callejas has given to his agents, employees, solicitors, salespersons, and others that carry out his schemes.

10. Defendant Callejas is not merely a bystander. He is the mastermind that scheme, planned, directed, initiated, and controlled the illegal and fraudulent behavior.

11. Defendant Callejas is well aware his conduct violated the TCPA and Tex. DPTA and refused to alter their behavior. Defendant Callejas is the sole director of Capital and the

12

only person with the power to make the unlawful, fraudulent, and unethical behavior stop. Yet, Callejas has taken no steps to stop the behavior because the behavior benefits Callejas financially. Defendant Callejas breaks the law with his eyes and pocketbooks wide open.

12. Defendants Callejas should be held jointly and severally liable for both the TCPA violations and Tex. Bus. Com. Code 302.101 via the Tex. DTPA because they actually committed the conduct that violated the TCPA and Tex. DTPA, and/or they actively oversaw and directed this conduct.

13. Defendant Callejas should be held liable because to do otherwise would simply allow him to dissolve Capital and set up a new corporation and repeat their conduct. This would result in both the TCPA and DTPA being unenforceable.

### The Plaintiff's cell phone is a residential number

75.     The calls were to the Plaintiff's cellular phone (915) 252-9280 which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phone to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

76.     The actions of the Defendants violated the Texas Business and Commerce Code 305.053

13

by placing automated calls to a cell phone which violate 47 USC 227(b). The calls by the Defendant violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

77.    The calls by the Defendants violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

## I.    FIRST CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(c))

### (Against All Defendants)

1.    Mr. Salaiz realleges and incorporates by reference each and every allegation set forth in

the preceding paragraphs.

2.    The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute

a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the national do-not-call registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

3.    Mr. Salaiz is entitled to an award of at least $500 in damages for each such violation. 47

U.S.C. § 227(c)(5)(B).

## II. SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

1.    Mr. Salaiz realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a.    a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1); [2]

    b.    training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

    c.    in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

3.    Mr. Salaiz is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

4.    Mr. Salaiz is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).

[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

5.      Mr. Salaiz also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and Capital's name in the solicitations.

### III.  THIRD CLAIM FOR RELIEF:

### Violations of The Texas Business and Commerce Code 305.053

1.      Mr. Salaiz realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Salaiz cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendant violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

3.      Mr. Salaiz is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

4.      Mr. Salaiz is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

### IV.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the defendants jointly and severally as follows:

A.      Leave to amend this Complaint to name additional DOEs as they are identified and to conform to the evidence presented at trial;

16

B. A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C. An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $3,000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for six calls.

E. An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F. An award to Mr. Salaiz of damages, as allowed by law under the TCPA;

G. An award to Mr. Salaiz of interest, costs and attorneys' fees, as allowed by law and equity

H. Such further relief as the Court deems necessary, just, and proper.

March 4, 2022

Respectfully submitted,

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-252-9280
Salaiz.ep@gmail.com